[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10290
Non-Argument Calendar

_____

D.C. Docket No. 1:18-cv-00090-LAG-TQL

FLOYD ANTONIO HENRY,

Plaintiff-Appellant,

versus

CALHOUN SP WARDEN,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(February 24, 2021)

Before JORDAN, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Floyd Henry, represented by counsel on appeal, appeals the district court's

dismissal of his *pro se* 42 U.S.C. § 1983 complaint for failure to exhaust available

administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  After careful review, we affirm.

The relevant background is this:  Henry filed a *pro se* lawsuit under § 1983 against the Warden of Calhoun State Prison for failing to protect him from an attack by another inmate.  Henry alleged that, on December 16, 2017, a gang member entered his cell and struck him with a chair, causing him to bleed profusely.  According to Henry, he was housed in an area previously reserved for members of a faith-based program, but at some point, the population "changed to include dangerous inmates."  Despite the change in population, Henry alleged, the Warden failed to secure unbolted tables and chairs or to adequately monitor the area, which allowed the attack to occur.  Henry said he did not report the assault immediately because he feared "gang retaliation," but someone else reported the incident, and he was treated by a nurse and questioned by a prison official on December 18.

The Warden moved to dismiss the complaint on the ground that Henry failed to exhaust his available remedies under the prison's grievance procedure.  In support, the Warden offered evidence that Henry did not file a grievance relating to the incident until March 21, 2018, well outside the ten-day timeframe for initiating the grievance process.  The grievance was rejected as untimely, and that decision was upheld on administrative appeal.  Due to the rejection of his grievance as untimely, the Warden argued that Henry's complaint should be dismissed for failure to exhaust

2

administrative remedies as required by the PLRA. The district court agreed and granted the Warden's motion to dismiss. This appeal followed.

We review *de novo* a district court's interpretation and application of the PLRA's exhaustion requirement. *Johnson v. Meadows*, 418 F.3d 1152, 1155 (11th Cir. 2005). The PLRA requires prisoners who wish to challenge some aspect of prison life to exhaust all available administrative remedies before resorting to the courts. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see* 42 U.S.C. § 1997e(a). The failure to exhaust requires dismissal. *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2005).

To satisfy the exhaustion requirement, a prisoner must complete the administrative process in accordance with the applicable grievance procedures set by the prison. *Jones*, 549 U.S. at 218. As a result, an untimely grievance that is rejected as such by prison officials does not satisfy the PLRA's exhaustion requirement. *Johnson*, 418 F.3d at 1156–59.

Nevertheless, although exhaustion is generally required, a remedy must be "available" before a prisoner is required to exhaust it. *Turner v. Burnside*, 541 F.3d 1077, 1082, 1084 (11th Cir. 2008). "An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. ___, ___, 136 S. Ct. 1850, 1858 (2016). An "available" remedy is one that is "capable of use to obtain some relief for the action complained of." *Id.* at 1859 (quotation marks

3

omitted).   Accordingly, "an inmate is required to exhaust those, but only those, grievance procedures that are capable of use" to obtain relief.  *Id.*

The Supreme Court has identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief."  *Id.*  They are (1) when the grievance procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "when *prison administrators* thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id.* at 1859–60 (emphasis added).

Henry concedes that he failed to file a timely grievance in accordance with the prison-grievance procedure.  He also does not challenge any aspect of the grievance procedure itself.  Nor does he attribute his failure to timely file a grievance to the actions of any prison official.  Accordingly, Henry does not present any of the "three kinds of circumstances" that, according to the Supreme Court, may make a grievance procedure unavailable.  *See id.*

Instead, Henry argues that the grievance procedure was not "available" because he feared gang retaliation if he filed a grievance related to the attack.  But he offers no legal support for his claim that, alone, fear of retaliation by other inmates

4

may make a grievance procedure unavailable.[1]  And the fact that he may have feared retaliation from other inmates by using the grievance procedure does not mean that the grievance procedure itself was "not capable of use to obtain relief."  *Id.* at 1859.  Other inmates are not employees or agents of the prison and have no role in the administration of the prison-grievance procedure.  Accordingly, Henry has not shown that the prison's grievance procedure was not "available."  *See id.*; *Turner*, 541 F.3d at 1082.  He was therefore required to comply with its procedures before filing suit, and his untimely grievance does not suffice.  *See Johnson*, 418 F.3d at 1156–59.

Finally, even if we assume that, alone, other inmates could make a grievance procedure unavailable, Henry's allegations are not enough to establish that the grievance procedure was unavailable in this case.  Henry says he did not timely report the incident because he feared gang retaliation (though he does not offer any supporting details about that fear).  But it appears that the incident was reported anyway, and he was questioned by a prison official two days after the incident occurred.  Given these facts, it's not clear why "a reasonable inmate of ordinary firmness and fortitude" would fear taking the additional step of filing a grievance against the Warden or the prison based on the incident.  *See Turner*, 541 F.3d at 1085

---

[1] It could be argued that the actions of other inmates may be attributed to prison officials in certain circumstances.  But Henry does not make that argument here, so we do not address it.

5

(stating that a prisoner must show that "the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust").  And, in fact, Henry did eventually file a grievance related to the incident, though there is no indication of a change in prison circumstances.  Therefore, even if, by itself, fear of retaliation from other inmates could make a grievance procedure unavailable, Henry has not made such a showing here.

Accordingly, the district court correctly concluded that Henry failed to exhaust available administrative remedies as required by the PLRA.  We therefore affirm the dismissal of his complaint.

**AFFIRMED.**